## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PHILLIP SMITH #384287** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-258** |
| **DARREL VANNOY, WARDEN** | **SECTION: "S"(1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### I. State Court Factual and Procedural Background

Petitioner, Phillip Smith, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On September 28, 1995, Smith was charged by a bill of indictment with first degree murder in violation of La. Rev. Stat. § 14.30.[1] The charge was subsequently amended to one count of second degree murder.[2] After a trial, a jury found petitioner guilty as charged.[3]

---

[1] State Rec., Vol. 1 of 13 , Bill of Indictment dated September 28, 1995. Co-defendant Terry Havies was also charged.
[2] State Rec. Vol.1 of 13, Amended Bill of Indictment (undated); minute entry dated 11/30/95.
[3] State Rec., Vol. 3 of 13, minute entry dated June 10, 1997; minute entry dated June 11, 1997; minute entry dated June 12, 1997; minute entry dated June 13, 1997; verdict dated June 13, 1997; State Rec., Vol. 8 of 13, trial transcript of June 10, 1997; State Rec., Vol. 9 of 13, trial transcript (con't) of June 10, 1997; trial transcript of June 11, 1997; State Rec. Vol. 10 of 13, trial transcript of June 12, 1997, trial transcript of June 13, 1997.

On June 27, 1997, the trial court sentenced petitioner to life imprisonment without the benefit of probation or suspension of sentence.[4]

On April 15, 1998, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[5]  Petitioner did not file a writ application with the Louisiana Supreme.

On July 27, 2000, petitioner filed a motion to correct illegal sentence which the state district court denied on October 2, 2000.[6]  The Louisiana Fifth Circuit denied his related writ application on January 30, 2001.[7]  Petitioner filed a writ application with the Louisiana Supreme Court which denied relief on December 7, 2001.[8]

Petitioner filed an application for post-conviction relief on March 8, 2001, which the state district court dismissed for failure to use the uniform application form.[9]  His subsequent application was denied on April 19, 2001, on all claims except claim five.[10]  On June 1, 2001, the state district court denied relief as to claim five.[11]  Petitioner's related writ application to the Louisiana Fifth Circuit was denied.[12]  The Louisiana Supreme Court denied his related writ application on December 7, 2001.[13]

---

[4] State Rec., Vol. 3 of 13, minute entry dated June 27, 1997; State Rec., Vol. 10 of 13, sentencing transcript of June 27, 1997.

[5] State v. Smith, 710 So. 2d 1187 (La. App. 5th Cir. 1998); State Rec., Vol. 11 of 13.

[6] State Rec., Vol. 12 of 13, Order dated October 2, 2000; Motion to Correct an Illegal Sentence dated July 27, 2000.

[7] State Rec., Vol. 12 of 13, La. 5th Cir. Order, 01-KH-83, dated January 25, 2001; Writ Application, 01-KH-83, postmarked January 11, 2001.

[8] State Rec., Vol. 12 of 13, Louisiana Supreme Court Order, 2001-KH-0881, dated December 7, 2001

[9] State Rec., Vol. 4 of 13, Order dated March 16, 2001; Memorandum in Support of Application for Post-Conviction Relief dated March 8, 2001.

[10] State Rec., Vol. 4 of 13, Order dated April 19, 2001; Uniform Application for Post-Conviction Relief dated March 29, 2001.

[11] State Rec., Vol. 4 of 13, Order dated June 1, 2001; State's Statement of the Case dated May 16, 2001.

[12] State Rec., Vol. 13 of 13, La. 5th Cir. Order, 2001-KH-2247, dated December 7, 2001; 5th Cir. Writ Application, 01-KH-731, postmarked June 27, 2001.

[13] State ex. rel. Taylor v. State, 803 So. 2d 26 (La. 2001); State Rec., Vol. 12 of 13.

Smith filed his first habeas application on March 20, 2002.[14] By order and judgment signed December 10, 2002, the district court dismissed the petition with prejudice as untimely. His appeal was dismissed by United States Fifth Circuit Court of Appeals for lack of prosecution.

On November 14, 2008, Smith filed a writ application with the Louisiana Supreme Court.[15] On April 24, 2009, the Louisiana Supreme Court ordered the petitioner's writ application transferred to the Louisiana Fifth Circuit Court of Appeal for consideration in accordance with State v. Cordero, 993 So. 2d 203 (La. 2008).[16] On May 27, 2011, the Fifth Circuit granted reconsideration and denied the writ.[17] The Louisiana Supreme Court denied petitioner's related writ application on March 30, 2012.[18]

On March 25, 2013, following the United States Supreme Court decision in Miller v. Alabama, 567 U.S. 460 (2012), holding that the Eighth Amendment's prohibition of cruel and unusual punishment prohibits imposition of mandatory life in prison without the possibility of parole for juveniles, petitioner filed a motion to correct illegal sentencing and request for resentencing.[19] At a hearing on January 16, 2014, the state district court denied the request for resentencing.[20] The Louisiana Fifth Circuit dismissed petitioner's appeal but granted him thirty days to file a writ application in order to seek review under the court of appeal's supervisory jurisdiction.[21] Petitioner filed a writ application with the Louisiana Fifth Circuit.[22] The Louisiana

---

[14] Smith v. Burl Cain, Civ. Action No. 02-0796 "H" (E.D. La. 2002).

[15] State Rec., Vol. 13 of 13, Writ Application, 08 KH 2690, dated November 14, 2008.

[16] State ex rel. Smith v. State, 7 So. 3d 1213 (La. 2009); State Rec., Vol 13 of 13.

[17] Smith v. State, 09-533 (La. App. 5th Cir. May 27, 2011) (unpublished); State Rec., Vol 13 of 13.

[18] State ex rel. Smith v. State, 85 So. 3d 109 (La. 2012); State Rec., Vol. 13 of 13.

[19] State Rec. 12 of 13, Motion and Order to Correct Illegal Sentence Pursuant to La.C.Cr.P. Article 882 and Request for Resentencing dated March 25, 2013; Memorandum in Support of Motion and Order to Correct Illegal Sentence dated March 25, 2013.

[20] State Rec., Vol. 12 of 13, hearing transcript of January 16, 2014.

[21] State v. Smith, 164 So. 3d 902 (La. App. 5th Cir. 2014); State Rec., Vol. 12 of 13, Appeal Brief, 2014-KA-359, dated May 28, 2014.

[22] State Rec., Vol. 13 of 13, Writ Application, 14-KH-915, dated November 24, 2014.

Fifth Circuit denied relief finding that <u>Miller</u> was not subject to retroactive application on collateral review.[23]

Smith filed his second habeas application on May 14, 2012.[24] The magistrate judge denied his motion to proceed in forma pauperis finding sufficient funds in his account to pay the filing fee, and the case was closed on May 23, 2012.

Petitioner filed another motion to correct illegal sentence on April 15, 2016, following the decision in <u>Montgomery v. Louisiana</u>, 577 U.S. 190 (2016), wherein the United States Supreme Court held that <u>Miller</u> applied retroactively to defendants whose convictions and sentences became final prior to the <u>Miller</u> decision in 2012.[25] The state district court appointed counsel and set the matter for resentencing in light of <u>Montgomery</u>.[26] At a hearing on December 7, 2017, the court resentenced petitioner pursuant to <u>Miller</u> to life in prison observing that petitioner was eligible for parole "by operation of law."[27] Petitioner's motions for reconsideration were denied on January 25, 2018 and April 3, 2018.[28]

On appeal, petitioner, through counsel, argued that: (1) there was error patent on the face of the record in that the uniform commitment order did not correctly reflect the ruling of the court; and (2) in the alternative, if the appellate court were to find that the state district court sentenced Smith to life without the benefit of parole, the sentence was excessive and should be reduced to life with parole.[29] In a pro se supplemental brief, petitioner raised the following claims: (1) the trial court had violated the Supremacy Clause of the United States Constitution by disobeying the

---

[23] <u>State v. Smith</u>, 14-915 (La. App. 5th Cir. January 22, 2014) (unpublished); State Rec. Vol. 13 of 13.
[24] <u>Smith v. Burl Cain, Warden</u>, Civ. Action No. 12-1317 "S" 6 (E.D. La. 2012).
[25] State Rec., Vol. 13 of 13, Motion to Correct Illegal Sentence dated April 15, 2016.
[26] State Rec., Vol. 13 of 13, Order dated April 28, 2016.
[27] State Rec., Vol. 13 of 13, hearing transcript of December 7, 2017; minute entry dated December 7, 2017.
[28] State Rec., Vol. 12 of 13, Order dated January 25, 2018; Superseding and Amended Order dated April 3, 2018; Motion to Reconsider Sentence dated December 18, 2017; Motion for Reconsideration of Sentence dated January 5, 2018.
[29] State Rec., Vol. 12 of 13, Appeal Brief, 2018-KA-0131 dated April 23, 2018.

substantive constitutional rule change announced in <u>Miller</u> and <u>Montgomery</u> that the Eighth Amendment demands that the court fashion an "individualized" sentence for juvenile offenders under the age of eighteen years old "whose crime reflects unfortunate yet transient immaturity"; (2) the trial court violated the petitioner's Fifth Amendment right to fair warning and protection against "unforeseeable and retroactive judicial expansion of narrow and precise language" when it amended his sentence and retroactively applied parole guidelines promulgated after he committed his offense; (3) the trial court violated the Ex Post Facto Clause when it retroactively applied parole guidelines promulgated after Smith committed his offense and those guidelines resulted in an increased measure of punishment attached to the covered crime; (4) he was denied a proportionate sentence in that the trial court failed to fashion an "individualized sentence" in violation of the Eighth Amendment; and (5) the trial court denied appellant due process when it refused to consider his motion for reconsideration of the excessiveness of his sentence.[30]   On October 17, 2018, the Louisiana Fifth Circuit Court of Appeal affirmed Smith's sentence and remanded the matter to the state district court for correction of the commitment order to reflect the petitioner's parole eligibility.[31]   The state district court amended the commitment as directed on October 24, 2018.[32]   On November 15, 2018, Smith sought review of the court of appeal ruling by filing a writ application with the Louisiana Supreme Court.[33]   On April 15, 2019, the Louisiana Supreme Court denied the writ application without stated reasons.[34]

---

[30] State Rec., Vol. 12 of 13, Supplemental Brief, 18-KA-0131, dated May 15, 2018.
[31] <u>State v. Smith</u>, 258 So. 3d 973 (La. App. 5th Cir. 2018); State Rec., Vol 12 of 13.
[32] State Rec., Vol. 6 of 13, Uniform Sentencing Commitment Order dated October 30, 2018; minute entry dated October 24, 2018.
[33] State Rec., Vol. 13 of 13, Writ Application, 18 KO 1959, dated November 18, 2018.
[34] <u>State v. Smith</u>, 267 So. 3d 1123 (La. 2019); State Rec. Vol. 13 of 13.

On January 9, 2020, petitioner filed the instant federal application, his third, seeking habeas corpus relief in which he asserts the following claims for relief:[35]  (1) the trial court had violated the Supremacy Clause of the United States Constitution by ignoring the substantive constitutional rule change announced in Miller and Montgomery that the Eighth Amendment demands that the court fashion an "individualized" sentence for juvenile offenders under the age of eighteen years old "whose crime reflects unfortunate yet transient immaturity;" (2) the trial court violated the petitioner's Fifth Amendment right to fair warning of the substantive penalty of the statutory text of second degree murder and retroactively applied parole guidelines promulgated after he committed his offense; (3) the trial court violated the Ex Post Facto Clause when it retroactively applied parole guidelines promulgated after Smith committed his offense and those guidelines resulted in an increased measure of punishment attached to the covered crime and (4) he was denied his right to a proportionate sentence.  Petitioner's claim number five (5) appears to overlap with the legal arguments presented in claim number two (2).

On May 6, 2020, the state filed its response.  Out of an abundance of caution, and despite caselaw to the contrary, the state claims petitioner's petition is untimely and successive.[36]  The state concedes that his claims are exhausted.[37]  The state argues that to the extent that petitioner claims that the state courts failed to file state court jurisprudence and/or state court sentencing law, his claims are not cognizable.  The state contends that the other claims are meritless.  Petitioner filed a traverse reiterating his claims.[38]

---

[35] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner executed his petition on January 9, 2020.  Rec. Doc. 1, p. 15.

[36] Rec. Doc. 11, pp. 10-13.

[37] Rec. Doc. 11, p. 6.

[38] Rec. Doc. 27.

## II. Timeliness and Successiveness

As an initial matter, the state raises, "in an abundance of caution," a limitations defense as well as claims that petitioner's habeas petition is successively filed without the required authorization from the United States Fifth Circuit Court of Appeals. The state claims that the December 7, 2017 hearing held by the state district court "modified" Smith's life sentence to the extent that the parole restriction was eliminated. The state claims that the state district court did not "exercise any judicial discretion as to the modification, and the proceeding did not alter the term of imprisonment – a life sentence – but eliminated the restriction on parole eligibility."[39] The state concedes that, should this Court determine that the December 7, 2017 hearing resulted in a new, intervening sentencing judgment, petitioner's application is both timely and not successive.[40]

With respect to the state's argument that the instant federal application is a "second or successive" federal petition filed without the required authorization from the United States Fifth Circuit Court of Appeals, it must be noted that federal law provides:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[39] Rec. Doc. 11, p. 13.
[40] Rec. Doc. 11, pp. 10, 12-13.

(3)(A) *Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.*

28 U.S.C. § 2244 (emphasis added).

While Smith's habeas petition is certainly third-in-time, in that it follows earlier federal petitions filed by Smith in 2002 and 2012, it is not impermissibly successive. Smith is challenging for the first time possible a new sentence of life with parole eligibility that was imposed on December 7, 2017 following the United States Supreme Court pronouncements in Miller v. Alabama, 567 U.S. 460 (2012) and Montgomery v. Louisiana, 136 S. Ct. 718 (2016). The state district court clearly resentenced Smith at the hearing at which he was represented by counsel to life with parole eligibility and petitioner was allowed a direct appeal of that sentence. Under these circumstances, authorization to file a habeas petition is not necessary. See e.g., Terrick v. Vannoy, Civ. Action No. 19-985, 2020 WL 2866603, at * (E.D. La. Jan. 13, 2020) (citing Stewart v. Vannoy, Civ. Action 16-8711, 2016 WL 7157082, at *3 (E.D. La. Oct. 13, 2016) (citing In Re Stewart, No. 14-30189 (5th Cir. June 18, 2014) (finding petition filed after Miller was not successive as the state district court granted petitioner's motion to vacate sentence and was in the process of resentencing him), adopted, 2016 WL 7116104 (E.D. La. Dec. 7, 2016) and Burge v. Cain, Civ. Action 13-721, 2015 WL 4168111, at *3 (E.D. La. July 1, 2015)), adopted, 2020 WL 1271138 (E.D. La. Mar. 17, 2020), certificate of appealability denied, No. 20-30227, 2021 WL 1390386 (5th Apr. 20, 2021), petition for cert., 20-7977, 2021 WL 1390386 (May 10, 2021).

The state's argument that the petition is untimely is also rejected. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final by the conclusion of direct review or the expiration of the time for seeking such

review."  Under the AEDPA, a state criminal judgment is not considered final for federal limitations purposes until both the petitioner's conviction and sentence are final.  See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67 (5th Cir. 2011). Here, while petitioner's conviction became final decades ago, his sentence did not become final until November 13, 2019 when he did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days after the Louisiana Supreme Court denied petitioner's writ application on August 15, 2019.  See Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (A state conviction "becomes final upon direct review, which occurs upon denial of certiorari by the Supreme Court or expiration of the period for seeking certiorari.")  Smith had one year from that date within which to file his § 2254 petition.  Smith filed his petition for habeas corpus on January 9, 2020, a mere fifty-eight (58) days later.

Because the state has failed to establish that the application was untimely or successive, the Court will now address the merits of petitioner's claims.

### III. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state courts' decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state courts' decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1705 (2014).  However, the

Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court
> unreasonably applies this Court's precedent; it does not require state courts to
> extend that precedent or license federal courts to treat the failure to do so as error.
> Thus, if a habeas court must extend a rationale before it can apply to the facts at
> hand, then by definition the rationale was not clearly established at the time of the
> state-court decision.   AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established under the guise
> of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases

give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot

be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van

Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has

also expressly cautioned that "an unreasonable application is different from an incorrect one."

Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir.

2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously

unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the

United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.
>
>     If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard
> against *extreme malfunctions* in the state criminal justice systems, *not a substitute*

> *for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White, 134 S. Ct. at 1701.

### III. Petitioner's Claims[41]

A.    **Violation of the Supremacy Clause and Disproportinate Sentence (Claim Nos. 1  and 4)**

In overlapping claims, Petitioner appears to contend that his new sentence of life imprisonment with benefit of parole is unconstitutional under Miller and Montgomery and that the Eighth Amendment and due process prohibit a life sentence without parole on juvenile offenders "whose crime reflect transient immaturity."  He claims that an "individualized sentencing determination" is constitutionally required regardless of how a state court addresses a Miller claim. He further claims that his sentence is unconstitutionally disproportionate under the Eighth Amendment.

The Louisiana Fifth Circuit, in addressing these claims, reasoned as follows:

---

[41] For ease of analysis, given the overlapping nature of some of Smith's claims, the presentation of his claims in his Traverse, and the manner in which the Louisiana Fifth Circuit addressed his claims, this Report and Recommendation addresses petitioner's claims in two separate sections.

Defendant also raises several pro se assignments of error. In his *pro se* assignments of error one and four, defendant argues the trial court violated his constitutional rights under the United States Constitution by disobeying the substantive "rule change" announced in Miller and Montgomery, in that the Eighth Amendment demands the trial court fashion an "individualized" sentence for juvenile offenders "whose crime reflects unfortunate yet transient immaturity." He claims the trial court here merely employed a procedural hearing to satisfy Miller's substantive "rule change," failing to impose an individualized sentence. Defendant concludes that the trial court's deletion of the parole restriction from his sentence does not satisfy the resentencing requirements under Miller.

As discussed above, in Miller, supra, the United States Supreme Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders. In Montgomery, supra, the Supreme Court recognized that states could remedy Miller violations by rendering a juvenile parole eligible rather than imposing a new sentence:

> Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile received life without parole. **A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them**. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity - and who have since matured - will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

Montgomery, 136 S.Ct. at 736 (citation omitted) (emphasis added).

To implement Miller's "meaningful opportunity to obtain release" for those juveniles who commit murder, the Louisiana Legislature enacted La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4, both cited above. In State v. Thompson, 51,674, 245 So.3d 302, 307-08 (La. App. 2 Cir. 11/15/17), the court addressed a similar claim that the trial court erred in resentencing the defendant to life with parole pursuant to La. R.S. 15:574.4(E), instead of imposing an individualized sentence and allowing the defendant an opportunity to develop a record for alternative sentencing under State v. Dorthey, 623 So.2d 1276 (La. 1993). The Thompson court noted that parole eligibility was the sole question to be answered in a Miller hearing and went on to hold:

> However, in the context of a Miller hearing, the only question for the court is eligibility for parole. State v. Keith [51, 389 (La. App. 2 Cir. 6/21/17), 223 So.3d 767], supra; State v. Shaw, supra; State v. Sumler [51, 324 (La. App. 2 Cir. 5/2/17), 219 So.3d 503], supra. Thompson received the most lenient sentence available under the current law, and the state was not required to relitigate the entire sentence.

Id. at 308; see also State v. Olivier, 17-724 (La. App. 4 Cir. 2/21/18), 238 So.3d 606, 609.

> Accordingly, when a juvenile defendant sentenced to life imprisonment is granted parole eligibility, Miller does not require a court to impose an individualized sentence at the Miller hearing.[42]

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

The Supremacy Clause, upon which petitioner relies, provides that the Constitution, federal laws, and treaties constitute "the supreme Law of the Land" and that "Judges in every State shall be bound thereby" notwithstanding state law to the contrary. U.S. Const. Art. VI, cl. 2. As the Supreme Court recognized in Montgomery, "[u]nder the Supremacy Clause of the Constitution, state collateral review courts have no greater power than federal habeas courts to mandate that a prisoner continue to suffer punishment barred by the Constitution" and that "[i]f a state collateral proceeding is open to a claim controlled by federal law, the state court "has a duty to grant the relief that federal law requires." 577 U.S. at 204-05 (citation omitted).

Petitioner's sentence of life with parole eligibility comports with Miller and Montgomery. Miller involved the imposition of a *mandatory* sentence of life imprisonment without the possibility of parole. In that case, the sentencing authority had no discretion to impose a different punishment on a juvenile offender "even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate." Miller, 567 U.S. at 465. The Supreme Court held that such a mandatory sentence for a juvenile offender was unconstitutional, stating:

> [O]ur ... decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes

---

[42] Smith, 258 So. 3d at 979; State Rec., Vol. 12 of 13.

> before us violate this principle of proportionality, and so the Eighth Amendment's
> ban on cruel and unusual punishment.

Miller, 567 U.S. at 489.  That said, the Supreme Court made clear that it was not holding that "the

Eighth Amendment requires a categorical bar on life without parole for juveniles"; rather, the

Court simply held that the sentencing authority is required to "take into account how children are

different" before imposing that penalty.  Id. at 479-80.

In Montgomery, the Supreme Court then held that Miller was retroactively applicable to

cases on collateral review and confronted the issue of how the states may remedy sentences

unconstitutional under Miller.  The Supreme Court explained that the remedies are left to the

discretion of the various states, noting:

> Giving Miller retroactive effect ... does not require States to relitigate sentences, let
> alone convictions, in every case where a juvenile offender received mandatory life
> without parole.  A State may remedy a Miller violation by permitting juvenile
> homicide offenders to be considered for parole, rather than by resentencing them.
> See, e.g., Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders
> eligible for parole after 25 years).  Allowing those offenders to be considered for
> parole ensures that juveniles whose crimes reflected only transient immaturity –
> and who have since matured – will not be forced to serve a disproportionate
> sentence in violation of the Eighth Amendment.

Montgomery, 577 U.S. at 212.

In the instant case, the state court chose to remedy the Miller violation simply by

resentencing petitioner to a term of life imprisonment with the possibility of parole.

That comports with Louisiana law.  Louisiana courts have expressly held that a Miller

violation may be remedied on collateral review by resentencing the offender to life imprisonment

with the possibility for parole without an evidentiary hearing or an individualized sentencing

determination.  See, e.g., State v. Harper, 243 So. 3d 1084 (La. App. 2d Cir. 2017).

It also comports with federal law and therefore does not run afoul of the Supremacy Clause.

As the Louisiana Second Circuit Court of Appeal accurately explained in Harper:

15

Harper's arguments that he was entitled to a full evidentiary hearing, the imposition of an individualized sentence, and consideration of whether he should be sentenced according to the lesser included responsive verdict are without merit.  *Miller imposed no such requirement in cases where parole eligibility was permitted*.  In Miller, the Supreme Court explained that the Eighth Amendment does not prohibit a court from imposing a sentence of life imprisonment with the opportunity for parole for a juvenile homicide offender or require the court to consider the mitigating factors of youth before imposing such a sentence.  Instead, *a sentencing court's obligation to consider youth-related mitigating factors is limited to cases where the court imposes a sentence of life, or its equivalent, without parole*.  Miller, supra.  The sole question to be answered in a Miller hearing is whether the defendant should have a chance for parole.

Harper, 243 So. 3d at 1089 (emphasis added).

Simply put: it is clearly meritless to suggest that the state court's decision to remedy petitioner's original unconstitutional sentence by resentencing him to life imprisonment with parole eligibility was contrary to, or involved an unreasonable application of, Miller, Montgomery, or any other Supreme Court precedent.

As for Smith's claim that his sentence of life imprisonment with parole eligibility is unconstitutionally disproportionate under the Eighth Amendment, the Fifth Circuit recently rejected that same claim in Jackson v. Vannoy, 981 F.3d 408 (5th Cir. 2020).  The court explained:

The final issue that Jackson seeks to certify for appeal is whether his sentence is unconstitutionally disproportionate under the Eighth Amendment. Jackson argues that Article 878.1 and Section 15:574.4 contravene Miller and Montgomery by refusing district courts any discretion to consider mitigating factors and impose individualized sentences less than life with the opportunity for parole. He demands a resentencing that takes his "life and characteristics" into account.

Jackson misapprehends the constitutional right recognized in Miller.  The Supreme Court held only that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison *without* possibility of parole for juvenile offenders." Miller, 567 U.S. at 479, 132 S.Ct. 2455 (emphasis added).  It does not disallow sentences of life imprisonment *with* the opportunity for parole for a juvenile homicide offender.  Nor is it clearly established that courts must consider mitigating factors of youth before imposing such a sentence.  Presently, all that is clearly established is that a sentencing court must consider youth-related mitigating factors in those cases in which it *does* impose a juvenile life-without-parole sentence.  Id.; see also Montgomery, 136 S. Ct. at 733.  Jackson's case is not among them.

Jackson, 981 F.3d at 417.  In fact, the Supreme Court recognized, "as a result of Montgomery, many homicide offenders under 18 who received life-without-parole sentences that were final before Miller have now obtained new sentencing proceedings and have been sentenced to less than life without parole."  Jones v. Mississippi, 141 S. Ct. 1307, 1322 (2021).

For all of the foregoing reasons, the state district court was not required under either Miller or Montgomery to consider mitigating factors before amending Smith's sentence.  His sentence of life with parole eligibility does not violate the Eighth Amendment or the Supremacy Clause.  The state court's decision on petitioner's claims was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  Smith is not entitled to relief as to these claims.

**B.**	**Violation of Due Process & Fair Warning (Claim Nos. 2 and 5) & Ex Post Facto Violation (Claim No. 3)**

In his second, third and fifth claims, Smith claims that the sentence violates his due process rights and the principle of fair warning.  He argues that the law in effect at the time he committed the offense is determinative of the penalty to be imposed.  In this case, however, the penalty for second degree murder, mandatory life imprisonment without parole, was declared unconstitutional.  Smith contends that his "present mandatory life sentence without parole leaves him without a punishment legislatively prescribed."[43]  He claims that the appropriate remedy to correct an illegal sentence is to remand for resentencing to the most serious penalty for the next lesser responsive verdict.  Smith also claims that the application of newly enacted law to impose a sentence of life imprisonment with the possibility of parole deprived him of the fair warning to which he was entitled.  He further claims that his resentencing violated the Ex Post Facto Clause.

---

[43] Rec. Doc. 27, p. 13.

On his second direct appeal, in rejecting these claim related to his resentencing, the Louisiana Fifth Circuit set forth the relevant circumstances and state statutory law regarding parole eligibility and reasoned as follows:

> In *pro se* assignments of error two, three and five, defendant argues his resentencing, pursuant to La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4, violated federal and state *ex post facto* clauses and his constitutional right to due process by failing to provide him "fair notice." He submits that his sentence violates his right to the protections of the "fair warning requirement" of the due process clause because it was based upon <u>Miller</u> and the legislature's response to <u>Miller</u>, which should not be applied retroactively to his case. He further contends that his sentence of life with parole eligibility is too harsh and that it constitutes an *ex post facto* application of the law because the new sentencing scheme announced in <u>Miller</u> did not exist at the time of his conviction and original sentencing. He avers that because the mandatory sentencing provision under which he was originally sentenced has been ruled unconstitutional, his sentence is illegal and he should be resentenced according to the penalties provided for in the lesser and included offense of manslaughter in effect at the time he committed the offense. He concludes that because his crime reflects "transient immaturity," he should be afforded the opportunity to prove that a downward departure from the sentence of life imprisonment is warranted in his case.
>
> To the extent defendant argues that his sentence of life with eligibility of parole violates his right to due process by failing to provide fair notice because it was not a sentencing option at the time of his offense, this argument has previously been addressed and rejected by this Court and other Louisiana appellate courts. <u>See</u> <u>State v. Terrick</u>, 18-102, p. 13-14 (La. App. 5 Cir. 8/29/18), 254 So.3d 1246, 2018 WL 4100778, 2018 La. App. LEXIS 1646; <u>State v. Comeaux</u>, 17-682 (La. App. 3 Cir. 2/15/18), 239 So.3d 920, finding the elements required to prove murder have not changed, and the potential sentence for committing that crime remains life imprisonment with the only difference being that the sentence may be imposed with the benefit of parole eligibility, which is a less harsh sentence; <u>State v. Shaw</u>, 51,325 (La. App. 2 Cir. 5/17/17), 223 So.3d 607, wherein the court reasoned that there is no deprivation of fair warning when the requirements to prove second degree murder have not changed, and thus, the defendant knew his conduct would constitute criminal behavior; <u>Olivier</u>, <u>supra</u>, finding the defendant's right to fair notice was not violated because life without possibility of parole is still an option when sentencing youth offenders.
>
> We further find defendant's argument that he should have been sentenced pursuant to the next lesser included offense, manslaughter, and that his life sentence with parole eligibility violated his due process rights because it retroactively exposed him to a sentence not in pace at the time of the offense, lacks merit. After the United States Supreme Court decided <u>Montgomery</u>, the Louisiana Legislature

amended La. C.Cr.P. art. 878.1 to provide resentencing guidelines for compliance with <u>Miller</u>. The Fourth Circuit in <u>State v. Williams</u>, 15-0866 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 253, writ denied, 16-0332 (La. 3/31/17), 217 So.3d 358, interpreted the amendment stating:

> The Louisiana legislature promptly addressed the <u>Miller</u> directive against mandatory life-without-parole sentences for juvenile killers by devising a sentencing procedure which would require that a trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted.
> ...
> [L]ife without parole is still a constitutionally acceptable sentence for adult killers and it is not a prohibited sentence for all juvenile killers. Our legislature carefully designed an adequate solution by adding a new statute pertaining to parole eligibility for juvenile killers which is to be read in conjunction with the first and second degree murder statutes. In the event that the trial court imposes a life sentence with parole eligibility, La. R.S. 15:574.4(E) provides conditions which must be satisfied before the defendant can apply to the parole board for parole consideration.

> Either sentencing scheme of life imprisonment with parole, or life imprisonment without parole, is proper and not unconstitutional under <u>Miller v. Alabama</u>, <u>supra</u>. Accordingly, we find the defendant was not entitled to be sentenced to the next available responsive verdict of manslaughter. <u>See</u>, <u>State v. Graham</u>, 14-1769 (La. App. 1 Cir. 4/24/15), 171 So.3d 272[, <u>writ denied</u>, 15-1028 (La. 4/8/16), 191 So.3d 583].

Further, in <u>State v. Brown</u>, 51,418, pp. 11-12 (La. App. 2 Cir. 6/21/17), 2017 La. App. LEXIS 1132, <u>writ denied</u>, 17-1287 (La. 4/27/18), 241 So.3d 306, the court found that eligibility for parole was the sole question to be answered in a <u>Miller</u> hearing and it was not necessary to consider whether the defendant was entitled to a downward departure from the mandatory sentence of life imprisonment at hard labor. <u>See also</u> <u>State v. Jones</u>, 15-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713, 719.

Lastly, similar arguments that the trial court violated both the state and federal *ex post facto* clauses when it retroactively applied newly-created reformatory procedures not in existence at the time the offense have been found unpersuasive. In <u>State v. Calhoun</u>, 51,337 (La. App. 2 Cir. 5/17/17), 222 So.3d 903, 907, the Second Circuit addressed the defendant's *ex post facto* claim regarding resentencing at a <u>Miller</u> hearing:

> The law in effect at the time of the crime determines the penalty to be suffered by the criminal. <u>State v. Sugasti</u>, 01-3407 (La. 6/21/02), 820 So.2d 518. Article I § 10 of the United States Constitution and La. Const. art. I, § 23 prohibit ex post facto application of the criminal law by the state.

The focus of the ex post facto inquiry is whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable. State v. Williams, 00-1725 (La. 11/28/01), 800 So.2d 790; State ex rel. Olivieri v. State, 00-0172 (La. 2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001). Clearly, the instant situation does neither. The trial court scrupulously awarded this defendant all to which he was entitled in parole consideration under the guidelines in La. R.S. 15:574.4(E).

This sentence is not illegal. He received the mandatory minimum sentence available under Miller, La. R.S. 14:30, and La. C.Cr. P. art. 878.1. As this Court noted in [State v.] Fletcher, [49,303 (La. App. 2 Cir. 10/1/14), 149 So.3d 934, writ denied, 14-2205 (La. 6/5/15), 171 So.3d 945, cert. denied, —— U.S. ——, 136 S.Ct. 254, 193 L.Ed.2d 189 (2015) ], the legislature was not required to amend the murder statutes to provide for sentencing of juvenile homicide defendants. The legislature designed an adequate solution to Miller by creating statutes relating to parole eligibility for juvenile homicide defendants which are to be read in conjunction with the murder statutes. He has a chance at parole, but he will have to earn it. This scheme is reasonable and satisfies Miller, supra.

In light of the foregoing, we find: (1) defendant's resentencing did not deprive him of due process by failing to provide him fair notice when the elements of the crime have not changed and his sentencing exposure is now less harsh; (2) that defendant's sentence is not excessive but rather a constitutionally acceptable sentence imposed with parole eligibility per proper retroactive application of La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E); (3) defendant is not entitled to be sentenced under the lesser included offense of manslaughter as the only issue in a Miller hearing is parole eligibility; and (4) that defendant's sentencing under Miller does not violate state and federal *ex post facto* clauses as the "new law" does not redefine criminal conduct or increase the penalty by which the crime is punishable. In sum, the trial court in this matter adhered to the law set forth in Miller and Montgomery with respect to defendant's resentencing. Defendant's life sentence with parole eligibility is a constitutionally acceptable sentence which now provides him with a meaningful opportunity for release.[44]

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

To the extent that petitioner is arguing that the state courts erred in applying the state laws in determining his new sentence, such a claim is not cognizable in a federal habeas corpus proceeding. Federal habeas corpus review instead is limited to questions of federal constitutional

---

[44] Smith, 258 So. 3d at 979-82; State Rec., Vol. 12 of 13.

dimension, and federal courts do not review alleged errors in the application of state law. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Molo v. Johnson, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Therefore, even if the state trial court failed to comply with state law regarding sentencing, such errors are not correctable in a federal habeas corpus proceeding. See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."). Any alleged impropriety based on state law does not warrant federal habeas review or relief.

Smith's fair warning claim is based on the Louisiana courts' failure to follow the longstanding practice of imposing punishment for the next most serious offense and instead sentencing him to a penalty that did not exist at the time of his offense. He claims that he had a vested due process right at the time of his conduct that if his sentence was ever invalidated he would be resentenced to the penalty for manslaughter. This Court disagrees.

The Due Process Clause safeguards "fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws." Rogers v. Tennessee, 532 U.S. 451, 457 (2001). However, it is axiomatic that because "there often arises a need to

clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves," Rogers, 532 U.S. at 461, jurisprudence necessarily evolves rather than remains static. In light of that reality, a petitioner's right to substantive due process in judicial decisionmaking is violated only where there has been an "unjustified and unpredictable break[ ] with prior law." Id. at 462.   Therefore, a change in decisional criminal law offends due process and violates the principle of fair warning "only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." Id. (quotation marks omitted).

Obviously, the Louisiana state courts *could have* chosen to remedy Miller violations by imposing punishment for the next most serious offense.  However, that is not the issue; rather, the issue is whether petitioner had a reasonable expectation that Miller violations would *necessarily* be remedied in that manner.  He did not.  Miller was a new case presenting a different problem than ones Louisiana courts had previously addressed, and the state courts have opted to solve that new problem in a different way.  That does not constitute a break with prior decisional law with respect to Miller-type violations, because no such law directly on point existed.  As a result, it simply cannot be said that petitioner had a reasonable expectation that Miller violations would necessarily be remedied in the same way as other violations or that the state courts' failure to do so was so "unexpected and indefensible" as to violate his right to substantive due process.  Cf. Burge v. Cain, Civ. Action No. 13-721, 2015 WL 4168111, at *8-11 (E.D. La. July 1, 2015) (addressing the remedying of violations of Graham v. Florida, 560 U.S. 48 (2010), which prohibited the imposition of a life without parole sentence on a juvenile offender for non-homicide offenses).  Moreover, because there is no United States Supreme Court precedent requiring state courts to resentence juvenile offenders in this context to the greatest penalty for the next lesser included offense, the state courts' denial of relief on this issue was neither contrary to nor an

unreasonable application of Supreme Court precedent.  Cf. Jones v. Leblanc, Civ. Action No. 16-844, 2017 WL 5125766, at *6 (E.D. La. Mar. 17, 2017) (addressing a Graham violation), adopted, 2017 WL 5068346 (E.D. La. Nov. 3, 2017), certificate of appealability denied, No. 17-30894, 2018 WL 7347668 (5th Cir. Sep. 4, 2018), cert. denied, 139 S. Ct. 1388 (2019).

Smith also claims his new sentence violates the Ex Post Facto Clause.  Specifically, he claims the state district court violated the Ex Post Facto Clause when it applied the parole guidelines set forth in La. Rev. Stat. § 15:574.4 and La. Code Crim. P. art 878.1, which were enacted by the Legislature after his offense was committed, to Smith at his resentencing.

Article 1, Section 10, of the United States Constitution prevents the States from enacting any "ex post facto law."  A change in a law violates the Ex Post Facto Clause if it "changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. 386, 390 (1798).  "Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized by [the Supreme Court] that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them."  Collins v. Youngblood, 497 U.S. 37, 41 (1990).

The Fifth Circuit addressed the same argument in Jackson.  In rejecting the claim, the Fifth Circuit reasoned as follows:

> Jackson next invokes the Ex Post Facto Clause. Article I, § 10 of the United States Constitution prohibits the ex post facto application of a criminal law by the state.  Jackson argues that his sentence of life imprisonment with parole eligibility under La. R.S. 15:574.4 violates this prohibition.  This one is not up for debate: Jackson is wrong.
>
> Retroactive application of a law violates the Ex Post Facto Clause only if it: (1) "punish[es] as a crime an act previously committed, which was innocent when done;" (2) "make[s] more burdensome the punishment for a crime, after its commission;" or (3) "deprive[s] one charged with crime of any defense available according to law at the time when the act was committed."  Collins v. Youngblood, 497 U.S. 37, 52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).  Only the second could

possibly apply here; and it does not.  See Peugh v. United States, 569 U.S. 530, 539, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013) (retrospective application of law only satisfies this category if it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" (quoting Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798))).  The Supreme Court's pronouncements in Miller and Montgomery necessitated a change in Louisiana's sentencing scheme for second-degree murder.  While the state court did indeed retroactively apply Louisiana's new sentencing scheme to Jackson, it did not impose an increase in penalty or any other disadvantage.  Quite the opposite: Jackson benefitted by receiving a less burdensome life sentence that affords him eligibility for parole consideration after 25 years' imprisonment. La. R.S. 15:574.4(E)(1)(a).

Jackson, 981 F. 3d at 417.

Similarly, Smith's sentence was decreased from life imprisonment without parole to life imprisonment with parole eligibility.  His new sentence is *less* burdensome because he is now eligible for parole when he was not previously eligible.

Accordingly, the state courts' denial of relief on these claims was neither contrary to nor an unreasonable application of established Supreme Court precedent.  Smith is not entitled to relief as to these claims.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Phillip Smith be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  27th  day of July, 2021.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**